1  CHARLES R. KOZAK, Esq.
2  Nevada State Bar No. 11179
   Chuck@KozakLawFirm.com
3  KOZAK & ASSOCIATES, LLC.
   3100 Mill Street, Suite 115
4  Reno, Nevada 89502
   Telephone: (775) 322-1239
5  Facsimile:  (775) 800-1767
6  *Attorney for Plaintiffs*

7              **UNITED STATES DISTRICT COURT**

8                    **DISTRICT OF NEVADA**

9

10  CHARLES R. KOZAK AND SUSAN K.          Case No.:
11  KOZAK,

12          Plaintiffs,

13  vs.                                     **PLAINTIFFS' COMPLAINT FOR: LACK
                                            OF STANDING TO FORECLOSE,
14                                          UNCONSCIONABLE CONTRACT,
    SELECT PORTFOLIO SERVICING, INC.,       BREACH OF CONTRACT, BREACH OF
15  QUALITY LOANS SERVICE CORP.,            FIDUCIARY DUTY, QUIET TITLE,
    AMERICAN HOME MORTGAGE                  SLANDER OF TITLE, TEMPORARY
16  ACCEPTANCE, INC.; EMC MORTGAGE          RESTRAINING ORDER/INJUNCTIVE
    CORPORATION, STRUCTURED ASSET          RELIEF, DECLARATORY RELIEF,
17  MORTGAGE INVESTMENTS II, INC.,          DUAL TRACKING, VIOLATION OF
                                            STATUE OF LIMITATIONS, ELDER
18  CITIBANK, NA AS TRUSTEE FOR             ABUSE, RICO ACT, AND NEVADA RICO
    SECURITIZED TRUST STRUCTURED           ACT
19  ASSET MORTGAGE INVESTMENTS II
    2007-AR6 TRUST, WELLS FARGO BANK,
20  NA, MORTGAGE ELECTRONIC
    REGISTRATION SYSTEM, ("MERS"), AND
21  DOES 1 THROUGH 100 INCLUSIVE, *et al.*
22
            Defendants
23    **PLAINTIFFS' COMPLAINT FOR: LACK OF STANDING TO FORECLOSE,
      UNCONSCIONABLE CONTRACT, BREACH OF CONTRACT, BREACH OF
24        FIDUCIARY DUTY, QUIET TITLE, SLANDER OF TITLE, TEMPORARY
        RESTRAINING ORDER/INJUNCTIVE RELIEF, DECLARATORY RELIEF, DUAL
25**
                                     1

TRACKING, VIOLATION OF STATUE OF LIMITATIONS, ELDER ABUSE, RICO ACT, and NEVADA RICO ACT

COMES NOW the Plaintiffs, Charles R. Kozak, Pro se and Susan K. Kozak, ("Plaintiffs"), complaining of the Defendants as named above, and each of them, as follows:

## JURISDICTION

1. The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between Citizens of different states. [28 U.S. Code Section § 1332].

2. Title 18 U.S.C. Section 1965(b) confers jurisdiction upon the district courts under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

3. Title 18 U.S.C. Section 3732 confers jurisdiction upon the district courts under the False Claims Act. [31 U.S.C. §§ 3729-3733].

4. Title 28 U.S. Code Section 1331 confers jurisdiction upon the district courts to enforce all laws relating to or arising under the Federal Securities laws. [Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, 578 U.S. ___ (2016)].

5. This Court also has supplemental jurisdiction under 28 U.S.C. §1367(a) over all other claims that are so related to claims in the action.

6. This Court also has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. § 1331. In connection with the acts and omissions alleged in this complaint, DEFENDANTS, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, and interstate telephone communications.

///

///

**THE PARTIES**

7. Plaintiffs are now, and at all times relevant to this action, residents of the County of Washoe, State of Nevada.

8. At all times relevant to this action, Plaintiffs owned and has superior claim to the Real Property (the "Home") located at 1225 Tarleton Way, Reno, NV 89523.

9. Defendant Select Portfolio Servicing Inc., is national loan servicing company. Plaintiffs are informed and believe and thereon allege that Select Portfolio Servicing Inc., is doing business in Salt Lake County, Utah.

10. Defendant Quality Loan Service Corporation is the Trustee for the Trustee Sale. Plaintiffs are informed and believe and thereon allege that Quality Loan Service Corporation is doing business in San Diego County, California.

11. Defendant American Home Mortgage Acceptance, Inc. is a National Banking Association doing business in the County of Washoe, State of Nevada. Plaintiffs are informed and believe and thereon allege that American Home Mortgage Acceptance, Inc. is the Original Lender.

12. Defendant Citibank, NA is a corporation doing business in the County of Washoe, State of Nevada. Plaintiffs are informed and believe and thereon allege that Citibank, NA is the Trustee of the Structured Asset Mortgage Investments II 2007-AR6 Trust.

13. Defendant Wells Fargo Bank, NA is a corporation doing business in the County of Washoe, State of Nevada. Plaintiffs are informed and believe and thereon allege that Wells Fargo Bank, NA is the Servicer of Plaintiffs loan.

3

14. Defendant EMC Mortgage Corporation is a corporation doing business in the County of Washoe, State of Nevada.  Plaintiffs are informed and believe and thereon allege that EMC Mortgage Corporation is the Sponsor of the Structured Asset Mortgage Investments II 2007-AR6 Trust.

15. Defendant Structured Asset Mortgage Investments II, Inc. is a corporation doing business in the County of Washoe, State of Nevada.  Plaintiffs are informed and believe and thereon allege that Structured Asset Mortgage Investments II, Inc. is the Depositor.

16. Defendant, Mortgage Electronic Registration Services, Inc., aka MERS ("MERS"). MERS is doing business in the County of Washoe, State of Nevada.  Plaintiffs are informed and believe, and thereon allege that MERS was acting in the capacity of electronic agent as a purported Nominee/Beneficiary for American Home Mortgage Acceptance, Inc. under the Deed; subsequently acting in a capacity of bailor/bailee for each successor defendant of bankruptcy remote Special Purpose Vehicle SAMI II 2007-AR6 Trust.

17. Plaintiffs do not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiffs, or claims some right, title, or interest in the Property. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained through discovery. Plaintiffs are informed and believe, and therefore allege that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to

4

Plaintiffs so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

18. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## **GENERAL ALLEGATIONS**

19. This is an action brought by Plaintiffs for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages.

20. Plaintiffs, homeowners, dispute Defendants' superior colorable claim to legal title and equitable title of the Prime Market Real Property in question (hereafter, the "Real Property"), which is the subject of this instant action.  Plaintiffs are the owners of the property by Grant Deed and Deed of Trust (Exhibit 1, Exhibit 2).

21. From 1998 until the financial crash of 2008-2009, over 60 million purported consumer credit mortgage loan transactions were purportedly sold by Non-Depository Payor Banks to Special Purpose Vehicles (hereinafter "SPV"). The Plaintiffs' purported home loan was one of the 60 million scheduled to for exchange.   (Exhibit G) PSA for SAMI II 2007-AR6

https://www.sec.gov/Archives/edgar/data/1410924/000138713107000072/0001387131-07-000072.txt

22. Plaintiffs are informed and believe, and thereon allege that Defendants participated in a transactional scheme whereby a purported Tangible Note is converted/exchanged

5

for a Payment Intangible asset to provide an alternative investment offering via Special Deposit to certificate or bond holders which were expected to be relatively safe; which, were offered by Wall Street Firms to the secondary market through purported mortgage backed securities. (Exhibit 3) OCC Asset Securitization Manual 1997, Pg. 23.



23. Plaintiffs are informed and believe, and thereon alleges that, certain tax laws known as the Real Estate Mortgage Investment Conduit (hereafter, REMIC) Tax Reform Act of 1986 were to be observed, and whereby the Non-Depository Payor Banks and Issuing Entities REMIC would be protected from either entity going into bankruptcy. To achieve the desired "bankruptcy remoteness," purported numerous "True Sales" of Plaintiffs' Tangible Note would have had to of occurred by operation of All applicable law.

24. Plaintiffs are further informed and believe, and thereon allege that there was no "True Sale" of Plaintiffs' Tangible Note, a circumstance whereby American Home Mortgage Acceptance, Inc. sold Plaintiffs' Tangible Note to the "buyer/seller" EMC Mortgage Corporation in an ordinary course of business by offer, acceptance, delivery and consideration given for full value of the entire instrument. (Exhibit 4) Real Estate and the Tax Reform Act of 1986.

25. The Original Lender, American Home Mortgage Acceptance, Inc., purports to have negotiated in accordance to all applicable laws the Tangible Note obligation in an ordinary course of business to successor Defendants. Plaintiffs are informed and believe, and thereon allege that American Home Mortgage Acceptance, Inc. has unlawfully purported to assign, transfer, or convey its interest in Plaintiffs' Note on or before the Closing Date of SAMI II 2007-AR6 Trust. Plaintiffs are informed and believe, and thereon allege that American Home Mortgage Acceptance, Inc. never negotiated the Tangible Note by operation of law for full value in accordance with all applicable law to EMC Mortgage Corporation.

26. Defendants deployed MERS as an electronic agent under the Constructive Deed of Trust as nominee/beneficiary for each successor Defendant as bailor/bailee to streamline a purportedly hypothecated security interest "Secret Liens" over the Payment Intangible after acquired collateral unlawfully construed as "Proceeds" of Plaintiffs' Real Property. Plaintiffs are informed and believe, and thereon allege that MERS only tracks and updates ownership of the Payment Intangible registered with the MERS database software system; MERS cannot transfer the beneficial right to the Tangible Accommodated Note instrument; a legitimate "True Sale" of a Tangible

7

Note instrument can only be transferred in an ordinary course of business by proper negotiation for full value, transfer and delivery by operation of all applicable law. (Exhibit 5) MERS Procedural Manual (Exhibit 6) MERS Patent.

27. Plaintiffs are further informed and believe, and thereon allege that payment for full value of the entire instrument was executed in an ordinary course of business from EMC Mortgage Corporation to American Home Mortgage Acceptance, Inc. There are no documents or records Defendants can be produced that demonstrate that prior to the October 31, 2007 closing date for the SAMI II 2007-AR6 Trust, the Tangible Note was duly indorsed, transferred and delivered to SAMI II 2007-AR6 Trust in an ordinary course of business by operation of all applicable law, including all intervening transfers including any purported transfers in the personal property Payment Intangible. Nor can any documents or records be produced that demonstrate that prior to October 31, 2007, the Deed of Trust was duly assigned, transferred and delivered to SAMI II 2007-AR6 Trust, via the Custodian of Records, Citibank, NA, including all Secret Liens purportedly securing the Payment Intangible intervening transfers/assignments.

28. Plaintiffs further allege that any documents i.e., MERS Assignment of Deed of Trust that purport to transfer a hypothecated beneficial security interest over the Payment Intangible underlying collateral of the Tangible Note or Bill of Exchange to SAMI II 2007-AR6 Trust after the Closing Date October 31, 2007 are void as a matter of law; no security interest in the Real Property was perfected in the name of any of the successor Defendants. The alleged holder of the Tangible Note is not the beneficiary of the Deed of Trust. The alleged beneficiary of Plaintiffs' Deed of Trust, MERS,

does not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or is not the real party in interest as agent or nominee to any action taken or to be taken against the Real Property by successor Defendants. (Exhibit 7) PSA Section 2.01 Conveyance of Mortgage Loans. Plaintiffs are also informed and believe, and thereon allege that at all times herein mentioned, any assignment of a Deed of Trust without proper transfer in an ordinary course of business of the Tangible Note that it secures is a legal nullity by operation of law. Plaintiffs are informed and believe, and thereon allege that the SAMI II 2007-AR6 Trust had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of herein below. A detailed description of the purported mortgage loans which form the SAMI II 2007-AR6 Trust is included in Form 424B5 ("the Prospectus"), which has been duly filed with the SEC. (Exhibit 8) SAMI II 2007-AR6 424B5 Prospectus Supplement.

https://www.sec.gov/Archives/edgar/data/1410924/000138713107000060/q00750_sami07-ar6.txt

29. Plaintiffs allege that Defendants, and each of them, cannot establish possession, show proper receipt, transfer, negotiations, assignment and ownership of the Tangible Note or Deed of Trust, resulting in imperfect security interests and claims; therefore, none of the Defendants have perfected any colorable claim of title or security interest in the Real Property. Defendants, and each of them, cannot establish that the Deed of Trust purportedly securing the Tangle Note, were legally or properly acquired in accordance to all applicable law. Plaintiffs therefore allege, upon information and belief, that none of the parties to transaction, nor any of the Defendants in this case, hold a perfected

and secured claim in the Real Property; and that all Defendants are equitably estopped and precluded from asserting an unsecured claim against Plaintiffs' estate.

30. Plaintiffs allege that an actual controversy has arisen and now exists between the Plaintiffs and Defendants, and each of them. Plaintiffs desire a judicial determination and declaration of its rights about the Real Property and the corresponding Tangible Note and Deed of Trust.

31. Plaintiffs also seek redress from Defendants identified herein for damages, for other injunctive relief, and for cancellation of written instruments based upon:

a. An invalid and unperfected security interest in Plaintiffs' Real Property hereinafter described;
b. Void "True Sales;"
c. An incomplete and ineffectual perfection of a security interest in Plaintiff's Real Property

## STATEMENT OF PERTINENT FACTS

32. Plaintiffs had a Forensic Chain of Title Securitization Analysis completed by qualified expert in to verify the claims of this complaint. (Exhibit 9) Affidavit of Michael Carrigan

33. Plaintiffs are the Superior Recorded owners of the Prime Market Property.  (Exhibit 1) Grant Deed.

34. Plaintiffs issued a Promissory Note to facilitate a loan in the amount of $490,000.00 to American Home Mortgage Acceptance, Inc.

35. Plaintiffs pledged a Constructive Deed of Trust granting Legal Title to Accommodate American Home Mortgage Acceptance, Inc. to file against Plaintiffs' Superior Claim to Title filed in the Official Records of the Washoe County Recorder's Office on May 1, 2007 as ins# 3527628. (Exhibit 2) Deed of Trust.

36. The purported Mortgage loan contracts between the parties are specific as to the duties of each party.

37. On April 20, 2010, a Notice of Default was filed with the Washoe County Recorder's Office as ins# 3873077.

38. On May 11, 2010, an Assignment of Deed of Trust was filed with the Washoe County Recorder's Office as ins# 3880444.

39. On September 22, 2010 & March 3, 2011, two Notice of Trustee Sale was filed with the Washoe County Recorder's Office as ins# 3925215 & 3979451, respectively.

40. On October 2, 2012, a Rescission of Lis pendens/Notice of Default/Notice of Sale was filed with the Washoe County Recorder's Office as ins# 4158192.

41. On September 6, 2013, MERS recorded an Assignment of Deed of Trust in the Washoe County Recorder's Office as ins# 4276891.

42. The September 6, 2013 Assignment was executed by Carl Bershell on behalf of MERS without disclosing his true employment with the assignee.

43. The September 6, 2013 Assignment occurred approximately six years after the Closing Date of the Trust in violation of the terms of the Trust and is therefore, void.

44. On October 3, 2013, an Assignment of Deed of Trust was filed with the Washoe County Recorder's Office as ins# 4286247.

45. The October 3, 2013 Assignment was executed by Patrick S. Cherry on behalf of MERS, without disclosing his true employment with the assignee.

46. The signature of Patrick S. Cherry on the October 3, 2013 Assignment does not match his signature on other, official documents and appears to be robo-signed, or forged.

11

47. The October 3, 2013 Assignment occurred approximately six years after the Closing Date of the Trust in violation of the terms of the Trust and is therefore, void.

48. There are no recorded Substitution of Trustee as mandated by NRS 107.028(4).

49. Plaintiffs allege that only the Depositor, Structured Asset Mortgage Investments II, Inc., is the rightful party that can convey the asset into the trust pursuant to investor offering documents as filed with the Securities and Exchange Commission.

## PROPERTY

50. The Real Property description which is the subject of this suit is commonly known as 1225 Tarleton Way, Reno, NV 89523.

## FIRST CAUSE OF ACTION:
## LACK OF STANDING/WRONGFUL FORECLOSURE

A.   **No Defendant Has Standing to Foreclose**

51. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

52. An actual controversy has arisen and now exists between Plaintiffs and Defendants specified hereinabove, regarding their respective rights and duties.  Plaintiffs contend that Defendants, and each of them, do not have an equitable right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the Real Property collateral, or cannot prove to the court they have a valid interest as a real party in interest to the underlying Deed of Trust. Thus, the purported power of sale, or power to foreclose non-judicially, by the above specified Defendants, and each of them, no longer applies.

53. Plaintiffs request this Court find that the purported power of sale contained in the Deed of Trust is a nullity by operation of law, because Defendants' actions in the

12

processing, handling and attempted foreclosure of the Real Property involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which directly caused Plaintiffs to be at an equitable disadvantage to Defendants, and each of them. Plaintiffs further request that title to the Real Property remain in Plaintiffs' name during the pendency of this litigation, and deem that any attempted sale of the Real Property is "unlawful and void".

**B.**   **Defendant MERS Cannot be a Real Party in Interest in a Securitized Mortgage**

54. Since the creation of Defendant's Deed of Trust, Defendant MERS was named the "nominee beneficiary" of the Deed of Trust.

55. Plaintiffs are informed and believe, and thereon allege that Defendant MERS lacks the authority under its corporate charter to foreclose a Deed of Trust, or to own or transfer an interest in a Tangible Note debt obligation because MERS charter limits MERS' powers and duties to functioning as an electronic registration system of Payment Intangible Chattel Paper Transferable Records as the underlying collateral to the Tangible Note for Accommodation Bill of Exchange.

56. Plaintiffs are informed and believe, and thereon allege that to conduct a foreclosure action, a person or entity must have legal capacity as interested party and standing.

57. The Tangible Note in this action identifies the entity to whom it accommodated, the Originator. Therefore, the Tangible Note herein cannot be transferred **in an ordinary course of business**; the attachments to the notice of default do not establish that indorsements were made, nor are there any other notices which establish that Tangible Note negotiation was executed in an ordinary course of business, nor are there any

13

other notices which establish that the Originator sold the Tangible Note to another party for full value.

58. Defendant's purported transfer off enforcement contract rights over the underlying Deed of Trust base their claim that the Tangible Note and underlying Security was negotiated  by operation of law in an ordinary course of business to Defendant Citibank, NA, the Trustee of Trust herein, by the Originator, it is well established State law that the assignment of a Deed of Trust does not automatically assign the Tangible Note nor the underlying Payment Intangible Transferrable Record as the security interest is incident of the Tangible Note debt obligation.

59. Pursuant to State law, one must be able to prove their capacity of holder of the Tangible Note as one with rights acquired in an ordinary course of business to perfect the transfer of enforcement contract rights to the Deed of Trust instrument as collateral for a Tangible Note debt obligation.   Without proper negotiation and physical transfer, the "true sale" of the Tangible Note is invalid as a fraudulent conveyance, or as an unsecured Tangible Note stripped fo the Real Property collateral.

60. Defendants MERS failed to submit documents authorizing MERS, as nominee beneficiary for the Originator, to assign the subject Deed of Trust to the Special Purpose Vehicle trustee.  Hence, MERS lacked authority as mere nominee beneficiary to assign Plaintiffs' Deed of Trust, making any assignment from MERS defective.

61. Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying Tangible Note attached together in one with the underlying Payment Intangible Transferable Record, is void under law.  Therefore, Defendant MERS cannot establish that it is entitled to assert a claim in this case. For this reason, as well

14

as the other reasons set forth herein below, MERS cannot transfer an interest in Real Property, and cannot recover anything from Plaintiffs. with unclean hands.

62. Defendants, and each of them, through the actions alleged above, claim the right to illegally commence foreclosure sale of Plaintiffs' Real Property under the Deed of Trust on the Real Property via an *in-Rem* action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiffs great and irreparable injury in that Real Property is unique.

63. The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiffs. Plaintiffs will not have the beneficial use and enjoyment of the Home and will lose the Property.

64. Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate to prevent irreparable loss to Plaintiffs. Plaintiffs suffered and will continue to suffer unless Defendants' wrongful conduct is restrained and enjoined because Real Property is inherently unique and it will be impossible for Plaintiffs to determine the precise amount of damage it will suffer.

## SECOND CAUSE OF ACTION
## UNCONSIONABLE CONTRACT

**(Against Defendant American Home Mortgage Acceptance, Inc. - SAMI II 2007-AR6)**

65. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

66. The actions of Defendants as set forth herein, resulted in Plaintiffs being forced, tricked, and mislead into parting with their property.

67. Generally, one must prove the following to bring a legally sufficient claim of Unconscionable Contract.

a.  Undue Influence;
b.  Duress;
c.  Unequal Bargaining Power;
d.  Unfair Surprise; and
e.  Limited Warranty

68. Defendant American Home Mortgage Acceptance, Inc. presented in the origination of the purported loan that specific criteria such as FICO score and other industry standard underwriting requirements must be met to qualify for a loan of money for the subject property from American Home Mortgage Acceptance, Inc.

69. Defendant American Home Mortgage Acceptance, Inc. presented in the origination of the purported loan that a preliminary signature on the Mortgage loan contract was required to "lock in" an interest rate regarding the terms of the purported loan.

70. Defendant American Home Mortgage Acceptance, Inc. failed to clarify in the terms of the Mortgage loan contract that American Home Mortgage Acceptance, Inc., the Originator on the contract, was in fact acting solely in the capacity as Accommodated Party account debtor beneficiary for a purported loan of money. American Home Mortgage Acceptance, Inc. concealed they were financially benefitting by bargaining with a third party to acquire a service release premium via wire funds transfer to table fund the purported loan at the closing using a warehouse line of credit.

71. Defendant American Home Mortgage Acceptance, Inc. knew or should have known that through a consciousness of innocence Plaintiffs were at a special disadvantage when attempting to grant an alternate means of collection via the Security

Instrument real property lien Mortgage to American Home Mortgage Acceptance, Inc.

72. Defendant American Home Mortgage Acceptance, Inc. intended to exploit Plaintiffs' special disadvantage and deny Plaintiffs' superior rights to the subject property.

**THIRD CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Against Defendant American Home Mortgage Acceptance, Inc./MERS)**

73. Plaintiffs re-allege and incorporate by reference all previous paragraphs as though fully set forth herein.

74. The terms of the mortgage contract are clear.

75. Pursuant to paragraph 23 – Release, Defendant American Home Mortgage Acceptance, Inc. and specifically MERS, their electronic agent, was obligated to satisfy, release and reconvey the beneficial security interest in Plaintiffs' pledged Deed of Trust upon payment of all sums associated with the release premium to American Home Mortgage Acceptance, Inc. for Accommodated Party services rendered.

76. Defendant American Home Mortgage Acceptance, Inc. was paid in full when it sold and relinquished its interest in Plaintiffs' real property to Structured Asset Mortgage Investments II, Inc.

77. Defendant American Home Mortgage Acceptance, Inc. failed to satisfy, release and reconvey the security instrument, thus breaching the terms found in paragraph 23 of the Deed of Trust.

## FOURTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

78. Plaintiffs re-allege and incorporate herein by reference all previous paragraphs as though fully set forth herein.

79. Generally, one must prove the following to bring a legally sufficient claim of Breach of Fiduciary Duty.

   a. Breach of full disclosure;
   b. Breach of good faith and fair dealing;
   c. Misuse of superior or influential position;
   d. Misuse of superior knowledge; and
   e. Failure to act in another's best interest

80. Defendant American Home Mortgage Acceptance, Inc. failed to disclose to Plaintiffs that they were not the legitimate creditor but more accurately, were account debtor in the accommodated table funded 26 U.S. Code § 1031 – Exchange of property held for productive use or investment to SAMI II 2007-AR6.

81. Defendant American Home Mortgage Acceptance, Inc. as beneficiary under the Mortgage having only an Accommodated personal property interest over the Real Property collateral failed to meet their fiduciary duty to satisfy, release and reconvey the Real Property Lien Deed of Trust and the beneficial security interest (personal property) therein after receiving payment for all sums represented as the service release premium

82. After April 26, 2007, and unknown to Plaintiffs, Defendant American Home Mortgage Acceptance, Inc. for payment rendered through a service release premium divested itself of their capacity under the Note but, did not comply with the covenants of the Deed of Trust specifically, Covenant 23 – Release.

18

83. American Home Mortgage Acceptance, Inc.'s acting not in the best interest of the grantor of the Deed of Trust failed to adhere to their Fiduciary Duties. Defendant American Home Mortgage Acceptance, Inc. was to satisfy, release and reconvey the security instrument allowing Plaintiff to maintain clear and marketable title. Because of its failure to comply with the Mortgage, Defendants caused a cloud on Plaintiffs' superior claim to title.  Thus, Plaintiffs were harmed.

### FIFTH CAUSE OF ACTION
### QUIET TITLE

84. Plaintiffs re-allege and incorporate herein by reference all previous paragraphs as though fully set forth herein.

85. All Defendants named herein claim an interest and estate in the property adverse to Plaintiffs in that Defendant asserts it is the owner of the note secured by the Deed of Trust to the property the subject of this suit.

86. All Defendants named herein claims an interest and estate in the Real Property adverse to Plaintiffs in that Defendants' asserts to be the owner of Tangible Note secured by the Deed of Trust to the Real Property, the subject of this suit.

87. The claims of all Defendants are without any legal right whatsoever, and Defendants have no estate, title, lien or interest in or to the Real Property, or any part of the Real Property.

88. The claim of all Defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to Plaintiffs' title, and these claims constitute a cloud on Plaintiffs' title to the Real Property.

89. Plaintiffs, therefore allege upon information and belief, that none of the Defendants in

this case hold a perfected and secured claim in the Real Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiffs' Real Property.

90. Plaintiffs request the decree permanently enjoin Defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to Plaintiffs' title to the property; and

91. Plaintiffs request the court award Plaintiffs' costs of this action, and such other relief as the court may deem proper.

## SIXTH CAUSE OF ACTION
## SLANDER OF TITLE

92. Plaintiffs re-allege and incorporate by reference all previous paragraphs as though fully set forth herein

93. Generally, one must prove the following to bring a legally sufficient claim of Slander of Title.

a. There was a communication to a third party of;
b. A false statement;
c. Derogatory to another's title;
d. With malice; and
e. Causing special damages.

94. There are no UCC 1 Financial Statements perfecting personal property interest in the Deed of Trust contract enforcement rights with the Secretary of State's Office where the Real Property resides, giving constructive notice to the world of the true capacity of the purported parties.  (See Asset Securitization Comptroller's Handbook Nov. 1997 http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/assetsec.pdf)

95. Such instruments remained unrecorded as "Secret Liens" within the collateral file and was never submitted for recordation to perfect Defendant's rights to the Note and pledged Deed of Trust lien and the right to enforce an alternate means of collection.

96. Defendants, by withholding such facts have potentially committed a grave error Slander of Title causing special damage.

97. The act of recording the purported May 11, 2010 Assignment of Deed of Trust into the Official Records of the Washoe County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiff's claim of title.

98. The act of recording the purported September 6, 2013 Assignment of Deed of Trust into the Official Records of the Washoe County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiff's claim of title.

99. The act of recording the purported October 3, 2013 Assignment of Deed of Trust into the Official Records of the Washoe County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiff's claim of title.

## SEVENTH CAUSE OF ACTION
## TEMPORARY RESTRAINING ORDER AND FOR INJUNCTIVE RELIEF

100. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

101.   Plaintiffs are the record title holder of the Property, and are now being threatened with irreparable injury by the conduct of Defendants.

102.   Plaintiffs will continue to be in jeopardy of injury by the Defendants' wrongful conduct by the now threatened foreclosure sale, causing irreparable injury by denying them the right to maintain the status quo between the parties pending resolution of the present dispute.

103.   Plaintiffs have no adequate remedy at law for both the factual and threatened injuries herein described.  Plaintiffs' real property residence and rights involved are non-fungible and utterly unique so that it will be impossible to accurately measure in monetary terms, the damage caused by Defendants' wrongful conduct.

104.   Defendants' numerous violations of federal and state statute and inability to establish a claim of right to Plaintiffs' Note or Deed of Trust establishes Plaintiffs' claim as more probable than not and Plaintiffs will likely prevail at the time of trial.

105.   Plaintiffs request that Defendants and its agents and employees be enjoined from prosecuting any continuance of a foreclosure sale pending trial.

**EIGHTH CAUSE OF ACTION**
**DECLARATORY RELIEF**

106.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

107.   An actual controversy has arisen and now exists between Plaintiffs and Defendants specified hereinabove regarding Plaintiffs' respective rights and duties in the subject note and security instrument.  Plaintiffs request a judicial determination of the rights, obligations and interest of the parties regarding the subject property,

and such determination is necessary and appropriate under the circumstances so that all parties may ascertain and know their rights, obligations and interests regarding the subject property.

108.   Plaintiffs should be the equitable owner of the Subject Property.

109.   Plaintiffs seek to quiet title as of the date of the filing of this Complaint. Plaintiffs seek a judicial declaration that the title to the Subject Property is vested in Plaintiffs alone and that the Defendants be declared to have no interest estate, right, title or interest in the subject property and that the Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to Plaintiffs' rights.

## NINTH CAUSE OF ACTION
## VIOLATION OF THE STATUTE OF LIMITATIONS

110.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

111.   The last payment made by Kozak on the promissory note was made on 2010. A notice of default was recorded on April 20, 2010 by the purported lender against the property.

112.   On October 2, 2002, the purported lender filed a rescission of the Notice of Default and Lis Pendens against the property.

113.   No further payments were made by the Kozaks on the promissory note up to and including the filing of this complaint.

114.   In the State of Nevada, the statute of limitations on a written contract is six years. NRS 11.190(1)(b).

23

115.   Pursuant to NRS 107.550 (3), pursuant to subsection 1, a civil action is dismissed, a notice of default and election to sell recorded pursuant to subsection 2 of NRS 107.080 or any notice of sale recorded pursuant to subsection 4 of NRS 107.080 is rescinded, or any pending foreclosure sale is cancelled, the mortgagee or beneficiary of the deed of trust is thereupon restored to its former position and has the same rights as though an action for a judicial foreclosure had not been commenced or a notice of default and election to sell had not been recorded.

116.   Pursuant to NRS 11.190(1)(b) the statute of limitations on a written contract begins to run from the last breach of the contract if it is an installment contract. In this case that date would be January1, 2010 when the last payment was overdue.

117.   The last Notice of Default was filed by the purported lender on December 5. 2016. This filing needed to have been filed by January 1, 2016 in order to have been timely pursuant to NRS 11.190(1)(b) because the S/L on a promissory note is six years from the date of default.

118.   Since the Promissory Note, which secured the Deed of Trust, has expired, the Deed of Trust is no longer enforceable.

**TENTH CAUSE OF ACTION**
**FAILURE TO MITIGATE DAMAGES**

119.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

120.   Because this loan was a subprime loan the Kozaks were required to obtain mortgage insurance (PMI) to guarantee their payments in the event of any delinquencies.

24

121.   Payments for this insurance came out of their monthly mortgage payments.

122.   The company supplying the mortgage insurance was Trident Mortgage Insurance Guaranty Inc.

123.   On information and belief Trident paid the lender most if not all of the mortgage funds due from the date of the first default by Kozaks.

124.   Trident is presently under a conservatorship in Federal District Court in Chicago, Illinois.

125.   Trident has paid 70% of all claims according to the report of the conservator.

126.   On August 21, 2017 the purported lender caused the trustee to file a notice of sale on the property demanding the full amount of all delinquencies, interest, taxes and insurance in the amount of $750,000.

127.   No credit was allowed for payments made by Trident to the lender.

128.   In addition, on information and belief the pooling and servicing agreement required the lender to provide insurance covering all taxes, insurance on the property in the event of a default by the borrower. No credit was allowed by the trustee on behalf of the borrower for said amounts.

## ELEVENTH CAUSE OF ACTION
## DUAL TRACKING

129.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

130.   Plaintiffs have been in negotiations with Select Portfolio Servicing, Inc. (SPS).

131.   SPS gave Plaintiffs a deadline of September 15, 2017 to comply with a request, dated August 16, 2017, from SPS for more documentation.

132.    On August 18, 2017, SPS sent a letter notifying Plaintiffs of a foreclosure sale scheduled for September 21, 2017.

133.    On August 21, 2017, Plaintiffs received a Notice of Trustee's Sale attached to their front door.

134.    The Nevada State Homeowner's Bill of Rights specifically protects homeowners from Dual Tracking.

135.    The Nevada State Homeowner's Bill of Rights requires Defendant SPS to either grant or deny a first-lien loss mitigation application before beginning or continuing the foreclosure process.

136.    Even if SPS denies the loan modification, the Nevada State Homeowner's Bill of Rights states that the lender still cannot foreclose until any applicable appeals period has expired.

## TWELFTH CAUSE OF ACTION
## ELDER ABUSE

137.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

138.    Plaintiffs, and each of them, are an older person or a vulnerable person, and have suffered and continue to suffer abuse that is caused by abuse by the Defendants, and each of them.

139.    Plaintiffs, and each of them, are an older person or a vulnerable person, and have suffered and continue to suffer loss of money or property that is caused by exploitation by the Defendants, and each of them.

140.   The Defendants, and each of them, are acting with recklessness, oppression, fraud, and/or malice in attempting to cause to the Plaintiffs, and each of them, the loss of their Home.

141.   The Defendants, and each of them, acted with recklessness, oppression, fraud, and/or malice in causing the Plaintiffs, and each of them, to suffer and continue to suffer personal injuries that are caused by abuse by the Defendants, and each of them.

142.   The Defendants, and each of them, acted with recklessness, oppression, fraud, and/or malice in causing the Plaintiffs, and each of them, to suffer and continue to suffer loss of money and/or property that is caused by exploitation by the Defendants, and each of them.

143.   Because the slow loan, the Kozak is required to obtain mortgage insurance (PMI) to guarantee their payments in the event of any delinquency.

144.   Defendants have acted with recklessness, oppression, fraud and malice; therefore, Plaintiffs are entitled to an award of attorney fees and costs of this suit.

NRS41.1395; DeRuise v. Progressive Cas. Ins. Co. Inc., 3:11-cv-00136-ECR, 2011 WL 3651297 (D. Nev. Aug. 17, 2011).

## THIRTEENTH CAUSE OF ACTION
## VIOLATION OF RACKETEER INFULENDED AND
## CORRUPT ORGANIZATIONS (RICO) ACT

145.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

146.   Title 18 United States Code Sections 1961 to 1968 make it unlawful for a

person to manipulate an enterprise to defraud another.

147.   The Defendants, and each of them, have profited from a scheme or enterprise

whereby the Defendants:

a.   Utilized such scheme and/or enterprise to defraud Plaintiffs, by use of,

i.   interstate mail, and/or,

ii.   interstate wire,

b.   in furtherance of their conspiracy to defraud Plaintiffs of property, and other

damages,

c.   by utilizing an enterprise, the CONSPIRACY,

d.   to wrongfully deprive the Plaintiffs and each of them,

i.   of the Property,

148.   By their actions, Defendants, and each of them, have harmed Plaintiffs, and each

of them, in amounts to be proven at time of trial, which sums are in excess of the

jurisdictional amount of this Court, and which includes compensatory damages,

punitive damages, and attorneys' fees.

**FOURTENTH CAUSE OF ACTION**
**VIOLATION NRS 207.360- NEVADA RICO ACT**

150.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

151.   Defendants have violated a predicate racketeering act.

152.   Plaintiffs will suffer injury to their Property by reason of Defendant's violation of

the predicate racketeering act.

28

153.    Defendant's violation proximately caused Plaintiff's injury.

154.    Plaintiffs have not participated in the racketeering violation.

155.    Therefore, under NRS 207.470, Plaintiffs are entitled to damages from Defendants for three times actual damages sustained.

## **PRAYER**

WHEREFORE PREMISES CONSIDERED as Prayer for Relief, and for the foregoing reasons, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon final hearing, Plaintiffs be awarded judgment:

•    Declaring that Defendants lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and/or to sell the subject properties;

•    Declaring that the trust deed is not a lien against the subject properties, ordering the immediate release of the trust deed of record, and quieting title to the subject properties in Plaintiffs and against Defendants and all claiming by, through or under them;

•    A refund of any wrongfully or improperly collected fees and payments to Defendants to which it had no right;

•    Pre- and post-judgment interest at the maximum rate allowed by law;

•    Attorney's fees;

•    Monetary relief over $100,000 but not more than $2,000,000,00; and

•    Such other and further relief at law and/or in equity to which Plaintiffs may be justly entitled including but not limited to damages within the jurisdictional limits of this Court, together with pre-judgment and post-judgment interest as are allowed by law.


Dated: October 6, 2017.

CHARLES R. KOZAK, ESQ.
*Attorney for Plaintiffs*

29

# EXHIBITS

| Exhibit No. | Document | No. Pages |
|:---:|---|:---:|
| 1 | Grant Deed | 3 |
| 2 | Deed of Trust | 21 |
| 3 | OCC Asset Securitization Manual, Pg. 23 | 93 |
| 4 | Real Estate and the Tax Reform Act of 1986 | 9 |
| 5 | MERS Procedural Manual | 218 |
| 6 | MERS Patent | 18 |
| 7 | PSA, Section 2.01 | 4 |
| 8 | REMIC 424B5 Prospectus Supplement | 3 |
| 9 | Certified Forensic Audit by Michael Carrigan | 63 |